UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,
*Plaintiff*,
v.

AHMET KEREM KORKAYA,
*Defendant*.

Case No. 26-cr-20306
Hon. Judith E. Levy

---

**DEFENDANT AHMET KORKAYA'S MOTION TO MODIFY CONDITIONS OF RELEASE**

Ahmet Kerem Korkaya is charged with five counts of conspiring to make interstate threats. (ECF No. 1). He was arrested at his home in Wisconsin on Wednesday, June 10, 2026 at 5:00 am. That afternoon, he appeared before Magistrate Stephen C. Dries of the United States District Court for the Eastern District of Wisconsin. The Pretrial Services report prepared at the time stated that "[t]here are no known factors indicating the defendant poses a risk of nonappearance" and the only risk of danger listed was the "Nature of the Instant Offense." Pretrial Services Report prepared by United States Probation Officer Jennifer L. Cravatta, 6/10/2026. Pretrial Services recommended that Mr. Korkaya be released on a personal recognizance bond with the only condition being that he refrain from any contact with known victims of the offense. Nonetheless, the Government sought detention and transfer to the Eastern District of Michigan. During the hearing, the Government sought a GPS tether and surrender of Mr.

Korkaya's passport. Magistrate Dries denied all of those requests. He adopted the recommendations of Pretrial Services. Mr. Korkaya was ordered released on a personal recognizance bond without a tether and with the only conditions being that he not have any contact with victims, witnesses, or co-defendants. He was not even ordered to surrender his passport or any travel documents.

The Government immediately appealed the following day. Mr. Korkaya was aware of the appeal and that there was a chance he could be taken into custody. Nonetheless, he appeared in the Eastern District of Michigan as ordered for his Initial Appearance before Magistrate Judge Kimberly Altman on June 15, 2026. He was ordered to be released on personal bond with conditions requiring him to wear a GPS tether and abide by a curfew restricting him to his residence every day from 8:00 pm to 8:00 am. (ECF No. 87). Since his release over three months ago, Mr. Korkaya has been in full compliance with the conditions of his release.

Mr. Korkaya now respectfully requests that this Court modify these conditions to no longer require him to wear a GPS tether and to remove the curfew. He has fully complied with all the conditions of his release. After obtaining new employment as a fifth-grade science and mathematics teacher in August, the Government stipulated to an order to modify his curfew so that he may leave his home residence at 6:30 am in order fulfill his new employment duties. He has subsequently obtained additional employment as a fifth and sixth-grade soccer

coach at the same school where he teaches. The GPS tether disrupts his lessons, distracts students, and poses a safety risk to the children he coaches. The curfew hinders his religious, spousal, and social engagements as well as his ability to regularly visit his and his spouse's families outside of the district in which he resides. Mr. Korkaya asks this Honorable Court to remove the GPS tether that he currently wears around his ankle. He has no objection to his location being monitored via his cell phone.

Mr. Korkaya has been monitored by Mr. Joseph Werner, United States Pretrial Services Officer from the Eastern District of Wisconsin. He reports that Mr. Korkaya "has been compliant with the program, as well as his bond conditions in general" but defers to the charging district pretrial services for a recommendation on location monitoring. US Pretrial Services Officer Rebecca Harla indicated that her office "would oppose [location monitoring] being removed completely; however, would agree to stand alone monitoring with GPS technology." Pursuant to LR 7.1(a), defense counsel sought the Government's concurrence. The Government opposes Mr. Korkaya's requested modifications.

Respectfully submitted,

*/s/ Jamil Khuja*

DATED: October 6, 2026

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,
*Plaintiff*,
v.

AHMET KEREM KORKAYA,
*Defendant*.

Case No. 26-cr-20306
Hon. Judith E. Levy

---

**DEFENDANT AHMET KORKAYA'S MEMODRANDUM IN SUPPORT OF MOTION TO MODIFY CONDITIONS OF RELEASE**

Ahmet Kerem Korkaya is charged with five counts of conspiring to make interstate threats. (ECF No. 1). Mr. Korkaya was arrested in the early morning hours of June 10, 2026, at his home in Milwaukee, WI. He appeared before Magistrate Stephen C. Dries of the United States District Court for the Eastern District of Wisconsin. He was released on personal recognizance bond that day and ordered to appear at the United States District Court for the Eastern District of Michigan on June 15, 2026. He was not wearing a tether and allowed to keep his passport and travel documents. He complied with the court's order and, accompanied by several family members, appeared in this district before Magistrate Judge Kimberly Altman on June 15, 2026 knowing that the Government had filed an appeal of his bond and there was a chance he could be taken into custody. He brought his passport and travel documents with him that day and surrendered them. He was ordered released that day but was ordered to wear a

GPS tether and abide by a curfew restricting him to his residence every day from 8:00 pm to 8:00 am (since modified to 8:00 pm to 6:30 am), and other conditions. (ECF No. 87). Since his release over three months ago, Mr. Korkaya has been in full compliance with all conditions of his release. Under 18 U.S.C. § 3156(a)(2), it is appropriate for this Honorable Court to consider his compliance with bond conditions for purposes of this motion to modify bond.

## I. This Honorable Court has the inherent authority to review and modify conditions of bond.

Pursuant to 18 U.S.C. §3142(c)(3), a "judicial officer may at any time amend the order to impose additional or different conditions of release." Additionally, 18 U.S.C. §3145(a)(2) provides that a motion may be filed "with the court having original jurisdiction over the offense … for amendment of the conditions of release." See *United States v. Bartlett*, 731 F. Supp. 3d 836, 850 (E.D. Mich. 2024) (citing 18 U.S.C. §3145(a) and noting, "[t]he Bail Reform Act allows both defendants and the Government to file motions to amend conditions of the defendant's pretrial release."). This Honorable Court has held that defendants may move this Court directly to modify and amend conditions of release. Recognizing the Court's position on the applicability of 18 U.S.C. §3145(a)(2), and for the sake of efficiency, Mr. Korkaya adopts the legal arguments made in those previous pleadings. (See also ECF 150, PageID.768-771 (Z. Hakim Reply)).

Further, pursuant to 18 U.S.C. §3145(a)(2), the Court does not need to consider whether new information exists and can make a de novo determination to amend conditions of release following the §3142(g) factors. *United States v. Pancholi*, No. 19-20639, 2022 U.S. Dist. LEXIS 179595, at *3; 2022 WL 4594595 (E.D. Mich. Sep. 30, 2022). The overarching goal of the Bail Reform Act is to impose conditions of release that are the "least restrictive" to "reasonably assure the appearance of the person as required and the safety of any other person and the community." *Id*. (quoting 18 U.S.C. §3142(c)(1)(B)). Mr. Korkaya, however, does present new information. He has complied with all court orders and conditions of his release. He has obtained new employment that is hindered, he wishes to attend religious services at his local mosque, and to be able to visit his family in this district. He is not anywhere near the alleged victims, witnesses, co-defendants, etc.

## II. Mr. Korkaya's curfew should be removed because it hinders his ability to fulfill his employment, religious, familial, spousal, and social commitments.

Mr. Korkaya's curfew hinders his ability to fulfill his religious, familial, spousal, and social commitments.

First, the curfew hinders Mr. Korkaya's ability to travel with his wife to visit their family and friends in the Eastern District of Michigan. Mr. Korkaya resides outside of the district at his residence in Milwaukee, WI and has regular communications with his Pretrial Services Officer, Joe Werner. While Mr. Werner

may be willing to approve Mr. Korkaya's travel requests, he is unable to do so. Mr. Korkaya is the only defendant with a court-ordered curfew that his Pretrial Services Officer has no authority over. Anytime Mr. Korkaya seeks to visit his parents and in-laws in the Eastern District of Michigan, he must receive a court order. He even needs a court order when traveling here to appear in court. Mr. Korkaya has successfully sought government stipulation and a court order to travel to and stay at his parents' home in the Eastern District of Michigan three times.

However, the restrictive nature of these conditions requires Mr. Korkaya to not only obtain a court order to make this journey but also restricts that drive to non-curfew hours, meaning that he spends much of his non-curfew time on the road rather than with his family members. He is required to drive during non-curfew hours, leaving him no choice but to spend six of his twelve non-curfew hours on the road. When seeking a court order to travel to and from the Eastern District of Michigan for the hearing on the protective order, the government concurred with his plans to travel back to the Eastern District of Wisconsin during curfew hours so that he may appear at his workplace the next day. Overall, these restrictions have made these visits cumbersome and logistically challenging and have deterred Mr. Korkaya from seeking this Court's leave to visit his family, one of his primary sources of support.

Second, the curfew restricts Mr. Korkaya's involvement with his religious community, recreational activities, and other prosocial engagements that are critical to his mental and physical wellbeing. He has been unable to attend three of the five daily prayers and religious services at his local mosque because they occur during curfew hours. The other two prayers that fall during his non-curfew hours take place when he is at work. He has had to discontinue his involvement in recreational sports like soccer and basketball because these engagements occur outside of curfew hours and are physically challenging to perform with a tether. He has been unable to go on his honeymoon or go on evening outings with his spouse after being newly married in May 2026 because of the curfew and other bond conditions, including the confiscation of his United States passport. Mr. Korkaya is the only defendant whose Pretrial Services Officer has no authority to adjust his curfew for these legitimate purposes, even his First Amendment right to practice his religion.

In sum, the curfew significantly hinders Mr. Korkaya's ability to engage in prosocial activities critical to his wellbeing.

## III. Mr. Korkaya's GPS tether should be removed because it disrupts and distracts students during school, and it poses a safety risk to the students he coaches.

Mr. Korkaya's GPS tether hinders his ability to fulfill his employment obligations, disrupts students' learning, and poses a safety risk to students.

On August 24, 2026, Mr. Korkaya began new employment as a fifth-grade science and mathematics teacher in Milwaukee, WI. On September 10, 2026, he began coaching fifth- and sixth-grade soccer after school. The GPS tether significantly hinders his ability to teach and coach effectively because its presence in the fifth-grade classroom, in the fifth- and sixth-grade congregation prayer that Mr. Korkaya leads, and in soccer practices distracts and confuses students. Students ask each other and other teachers about Mr. Korkaya's tether. On one occasion, students in one classroom disrupted class to ask their teacher about Mr. Korkaya's tether. In sum, the students, who are already prone to distraction, have been repeatedly distracted by Mr. Korkaya's tether.

Additionally, the GPS tether poses a physical safety risk to students. On multiple occasions when Mr. Korkaya has demonstrated coaching instructions during soccer practice, multiple students have struck themselves on the GPS tether. On one occasion, a child who collided with the tether winced in pain. These incidences have instilled fear and confusion in the young students who Mr. Korkaya coaches.

The GPS tether also causes indirect disruptions to Mr. Korkaya's employment. In the first hour of the first day of class, Mr. Korkaya received a phone call from overseeing Pretrial Services officer Jennifer Cravatta seeking to discuss a technological issue with the GPS ankle tether. She was calling because

Mr. Korkaya's assigned officer, Joe Werner, was off that day. Mr. Korkaya could not answer her phone call because he was in the middle of a lesson. He contacted Mrs. Cravatta as soon as he was able to, immediately visited the Pretrial Services Office in Milwaukee after school, and another on duty officer concluded that the there was no issue with his monitor, after all. Mr. Korkaya fears that more disruptive technical issues with his monitor may arise. His employer prohibits him from answering phone calls during lessons. Therefore, he is forced to decide whether the risks involved in ignoring important phone calls about his tether or bond conditions outweigh the risks of violating his employers' rules.

In sum, wearing the GPS tether significantly hinders Mr. Korkaya's ability to effectively perform the duties of his employment.

**IV. Mr. Korkaya's good moral character and lack of dangerousness establish that a tether is not necessary and is not the least restrictive means to reasonably assure his appearance in court and the safety of others.**

Under the Bail Reform Act, district courts have broad authority to amend or modify conditions of release "at any time." 18 U.S.C. § 3142(c)(3). Pretrial release must be "subject to the least restrictive further condition, or combination of conditions, that … will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(c)(1)(B). Defendants are presumed innocent; therefore, conditions are imposed to address "the weight of the evidence of dangerousness, not the weight of the evidence of the

defendant's guilt." 18 U.S.C. § 3142(j); *U.S. v. Stone*, 608 F. 939, 946 (6th Cir. 2010).

Mr. Korkaya's character and lack of dangerousness is reflected in his professional accomplishments and personal aspirations, community and family relationships, new employment as a schoolteacher, and letters of support written by members of his community. Mr. Korkaya is an MD/PhD student with a stellar academic record and professional aspirations. He has devoted the last ten years of his life to obtaining a Bachelor of Science in Biomedical Engineering and a Master's Degree in Biomolecular Science; conducting medical and scientific research, volunteering, and teaching; and a commitment to his family and community. Mr. Korkaya has multiple research publications, posters, and awards. He volunteered with the Children's Hospital of Georgia and Make-A-Wish Georgia as a Wish Granter. He tutored underprivileged K-12 students at the Sylvan Learning Center of Augusta for over 4 years. As a childhood cancer survivor, himself, he is dedicated to becoming a pediatric oncologist to pay forward the dedicated care that he received as a child. Mr. Korkaya is also a newlywed with close family and friends in greater Milwaukee and metro-Detroit.

Mr. Korkaya's commitment to his community and dedication to serving his patients is reflected in the seven individuals in his personal and professional

communities who have written to this Court in support of his character. Exhibits 1-6 (letters of support).

Mr. Korkaya has been monitored by Mr. Joseph Werner, United States Pretrial Services Officer from the Eastern District of Wisconsin. He reports that Mr. Korkaya "has been compliant with the program, as well as his bond conditions in general" but defers to the charging district pretrial services for a recommendation on location monitoring. US Pretrial Services Officer Rebecca Harla indicated that her office "would oppose [location monitoring] being removed completely; however, would agree to stand alone monitoring with GPS technology."

Mr. Korkaya's record of compliance, regular communications with Pretrial Services, new employment, need to visit his family and friends without hinderance, commitments to his personal and professional communities, and letters of support from his mentors and colleagues all justify and necessitate a modification of his bond conditions.

WHEREFORE, Ahmet Kerem Korkaya respectfully requests this Honorable Court grant his Motion to Modify Conditions of Release, remove his curfew and remove his GPS tether.

Respectfully submitted,

*/s/ Jamil Khuja*

DATED: October 14, 2026