UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

UNITED STATES OF AMERICA,

Case No. 26-CR-20306

Plaintiff,

Hon. Judith E. Levy

v.

D-1 ZAINAB ALIASGAR HAKIM
(a/k/a "Z")
D-2 AMATULLAH ALIASGAR HAKIM
(a/k/a "A")
D-3 PAIGE ELIZABETH FEYOCK
D-4 AHMET KEREM KORKAYA
(a/k/a "Met")
D-5 JONATHAN HONGRU ZOU
D-6 ALEXANDER MATTHEW SEPULVEDA
D-7 MARIAM MUHAMMED ODEH
D-8 COLIN HUNTER WEGER
(a/k/a "Beams")

Defendants.

---

**United States' Supplemental Brief on the Court's Protective Order**

---

On September 9, 2026, this Court held a hearing on the government's motion for a protective order, and the Court determined that a protective order was justified in this case. The government provided its proposed language for a protective order, (ECF No. 118-1),

and the defense provided its own proposed language, (ECF No. 157 (submitted by all defendants)). After considering both proposals, the Court went paragraph by paragraph and compared the proposed orders. The Court granted in part and denied in part the government's proposal. (Docket Entry 09/09/2026.) After it issued this decision, the Court directed the parties to confer and submit proposed language for a protective order consistent with the Court's rulings. But in subsequent discussions, the defense demanded novel amendments that altered its own positions on proposed language. In several circumstances, the defense sought to relegate decisions already rendered by the Court.

Party cooperation has broken down, and the government asks that the Court issue the protective order it granted on September 9. No party has filed a motion to reconsider the Court's decision. *See* E.D. Mich. L.R. 7.1(h)(2) (requiring motions for reconsideration to be filed within 14 days). There is no justification to relitigate the merits of the protective order or its language. Considering the parties' submissions ahead of the hearing and the Court's holdings, the Court should enter the protective order it has already granted, which is attached as Exhibit A.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Much of the factual background and procedural history have been recounted in the government's motion for a protective order and prior filings, which are herein incorporated. (*See* ECF No. 118, PageID.560-63, 566-67 (Motion for Protective Order); ECF No. 1 (Indictment); ECF No. 42 (Brief in Favor of Detention)).

Given the complexity of this investigation, which involved numerous law enforcement agencies, and the scope of the alleged criminal conduct, the discovery in this case is voluminous, spanning thousands of pages and terabytes of electronic information, mostly derived from electronic files such as phone extractions. The files also contain extraordinarily sensitive and private information. Specifically, they contain detailed personal information on the victims, third parties, and the defendants themselves, touching on where they live, where they frequently travel, who they associate with, what they spend money on, and even details about their intimate relationships.

After attempting to reach a cooperative agreement with the defense, on August 10, 2026, the government filed a motion for a protective order. (ECF No. 118.) As explained in the government's

motion, the defense agreed on the need for a protective order. (*Id.*, PageID.565-66.) But there were a few, specifically defined areas of dispute: disclosure of sensitive materials to third parties, including the press and civil attorneys, (*id.*, PageID.572-76; ECF No. 144, PageID.724-25); sealing of sensitive materials on the public docket (ECF No. 118, PageID.577-78; ECF No. 144, PageID.725); the defendant's unsupervised access to the sensitive materials (ECF No. 118, PageID.578-581; ECF No. 144, PageID.725-29); and protections for the names and identities of witness and victims (ECF No. 118, PageID.581-83; ECF No. 144, PageID.729-30). Other issues, such as the disclosure of sensitive material to defense witnesses and artificial intelligence, were not disputed. (ECF No. 146, PageID.751-52, 754 (Government's Reply).)

Prior to the hearing on the motion for a protective order, the defense filed a proposed protective order that all defendants agreed upon. (ECF No. 157-1.) The government agreed to most of this defense language, including the application of the protective order to "sensitive materials" and the scope and definition of "sensitive materials." (ECF No. 118-1, PageID.587; ECF No. 157-1, PageID.808.) The parties also agreed that

sensitive materials could not be disclosed outside of the defense team. (ECF No. 118-1, PageID.589-90; ECF No. 157-1, PageID.809.)

At the hearing and upon agreement of the parties, the Court found that good cause was established for the protective order. Fed. R. Crim. P. 16(d); (ECF No. 165, PageID.878.) The Court then proceeded paragraph by paragraph, comparing the government's proposed language with the language proposed by the defense. (*Id.* at PageID.878-79.) The Court granted some of the government's requests, and it denied others. Specifically, it reaffirmed the need for victim and witness protection and reiterated that the defendant's civil attorneys could request necessary documents through the civil discovery process, rather than through an exception to the protective order. (*Id.* at 873-74, 893-96). Further, the Court held that the defendants could be given unsupervised access to data from their own phone extractions, but the defendants could only view extractions from other defendants' phones with a member of the defense team. (*Id.* at 907-10). The Court also denied the government's request to require sealing of sensitive materials filed on the public docket, and it reiterated that the parties could file motions to seal specific documents or filings at the appropriate time. (*Id.* at 902-906).

Having granted in part and denied in part the government's motion for a protective order, the Court directed the parties to confer and submit agreed-upon language of the Court's protective order. Despite the clear language in the party's proposals ahead of the hearing and the Court's rulings, the parties conferred but were unable to reach agreement for the protective order. The Court already ruled on the protective order. Because there is no motion to reconsider or a new motion, the parties cannot relitigate settled issues or seek to revise agreed upon language.

## I. PROTECTIVE ORDER LANGUAGE

Rather than relitigating the merits of a motion the Court has already resolved, the government sets out and describes the parties' initial position on certain, significant terms of the protective order, along with the Court's decision on September 9 and the proper language for the Court's protective order.

### Paragraph 2: Sensitive Materials[1]

**The parties' proposals and the Court's holding:**

[1] The paragraph numbers reference the paragraphs of the protective order in Exhibit A.

Prior to the September 9 hearing, the government proposed the following language:

> Sensitive Materials. Sensitive Materials, include but are not limited to: materials containing electronic evidence obtained in this case, including social media accounts, iCloud accounts, email accounts, cell phone extractions; electronic surveillance warrants and their results; financial records; victim and third-party identifying and personal information; and federal search warrants. Sensitive Materials will be watermarked with this identification: "Attorney/Staff Custody Only D# [defendant initials], [attorney's name], [date of protective order]."

(ECF No. 118-1, PageID.587.)

Outside disagreement on watermark language, the defense agreed to almost identical terms:

> Sensitive Materials. Sensitive Materials include materials containing electronic evidence obtained in this case (including social media accounts, iCloud accounts, email accounts, cell phone extractions); electronic surveillance warrants and their results; financial records; victim and third-party identifying and personal information; and federal search warrants. Sensitive Materials will be watermarked with this identification in the upper right corner of the document (so as to not block or interfere with the body of the document): Sensitive Materials.

(ECF No. 157-2, PageID.809.)

At the September 9 hearing, the Court explained that the parties were "good with paragraph one" and in substantial agreement on its

terms. (ECF No. 165, PageID.879.) Both the government and defense proposed the same definition, meaning, and scope of "sensitive materials." Further, the Court held that the government's watermark requirement could be used, "but if [the defense] can't search it, you'll go back to the beginning and we'll do [the defense] proposal." (*Id.*, PageID.882.) As the Court explained, "there's no harm in them doing all this work [on the watermark] and doing it again if it doesn't work." (*Id.*)

**Party dispute and analysis:**

Ahead of the hearing, the parties did not dispute the terms and language of paragraph 2, other than the watermark language, and the Court clearly held that the government's language would be used absent technological issues preventing the defense from reading the files. Yet, after the hearing, the defense now seeks to change its position and completely rewrite these essential terms. It proposes the following:

> (2) Sensitive Materials. Based on a good-faith assertion that disclosure of the following information would result in clearly defined, specific, and serious injury, the U.S. Attorney's Office will designate Sensitive Materials the following: victim and third-party personal identifying information (PII) contained in electronic evidence obtained in this case, including social media accounts, iCloud accounts, email accounts, cell phone extractions; electronic surveillance warrants and their results; financial records; and federal search warrants.

> Sensitive Materials will be clearly marked, and such marking shall not obstruct the content of the material.
>
> (7) The Government will not designate any materials as Sensitive absent a good-faith basis to assert that, in the absence of the Sensitive designation, disclosure of the designated information would result in clearly defined, specific, and serious injury. The defense reserves the right to challenge the Government's designation of materials as Sensitive, at any time. The parties will make a good faith effort to resolve the designation issue before raising it with the Court.

(emphasis added).

This is not what the defendants proposed and agreed to ahead of the hearing, and it is not what the Court ordered. At no point in the hearing did the Court direct the inclusion of this novel language. Nonetheless, the defendants now seek another bite at the apple. First, the defendants include new language placing a legal standard for issuing the protective order, i.e., "good cause," within the definition and scope of sensitive materials. But the Court *already found good cause exists for this protective order*, which is a basic requirement to issue a protective order in the first place. (ECF No. 165, PageID.878.) And this was *agreed upon by the parties*. (ECF No. 157-2, PageID.809.)

Standard protective orders do not include a legal standard for determining good cause, which has already been found by the Court, in

the *definition* of the protected material itself. *See, e.g., United States v. Lusk*, Case No. 21-20307, 2023 WL 3721200, at *2-3 (E.D. Mich. May 30, 2023) (Drain, J.) (including no such language); *United States v. Brown*, Case No. 22-33, 2022 WL 9936378, at *3 (W.D. Ky. October 17, 2022) (same); *United States v. Toney*, Case No. 17-20184, ECF No. 415, PageID.2362 (E.D. Mich. Jan. 10, 2020) (Levy, J.) (same); *United States v. Dixon*, 355 F. Supp. 3d 1 (D.D.C. 2019) (same). Such language would be circular, redundant, and invite conflict. The protective order exists *because* good cause was found. There is no justification to redefine the coverage of sensitive materials with post-hearing amendments based upon whether good cause exists in the first place.

Further, the defendants alter their own agreed-upon definition of sensitive materials, changing the definition to only PII that is "contained in" specified records such as electronic files, rather than the electronic files themselves. Because of the extent of sensitive information intermixed in electronic files, and due to the nature of cellphone extractions, a protective order must broadly cover the *entire device file*. This avoids the results of the government reformatting the phone extractions into individual pages so they are reviewed and redacted, line

by line, to ensure proper protection for sensitive information. That not only creates an enormous administrative burden but also provides files in a far less convenient and easy to understand format for the defense. As a defense counsel explained: "The way those [cell phone extractions] are produced . . . is that they're produced as the whole device and produced in a program that allows us to actually be able to find things in the device that are relevant." (ECF No. 165, PageID.868.) If the protective order does not cover electronic devices in full, the government cannot properly ensure the protection of sensitive information, much of which is not relevant or discoverable, "unless [the defense] get[s] their discovery in PDF, which they don't want." (*Id.*, PageID.885 (emphasis added; *see also* ECF No.118, PageID.567-71 (explaining that coverage of the devices prevents "myriads of redactions and exclusions, splintering and segregating information, and requiring conversion from a software reader program to print out information page by page.")).

As explained in the government's motion and as agreed upon by the defense in its initial language, there is an enormous amount of highly sensitive information about the victims, third parties, and the defendants that is "thoroughly intermixed" with the electronic data, and thus, the

devices must be included in a protective order. (ECF No. 118, PageID.566-67; ECF No. 165, PageID.868, 885; ECF No. 118-1, PageID.587.) "They include details and communications of daily routines, locations frequently visited, group and third-party associations, information on family members, and intimate and sexual material, including information concerning third parties and Defendants themselves." (ECF No. 118, PageID.567.) Sensitive information goes beyond PII and must be protected from disclosure, as the parties and the Court all previously agreed. And given the fact that much of this material is not Rule 16 discovery and individual privacy cannot be "protected" once materials are released, electronic devices must be included in the order.

Using the defense's novel language will significantly harm the efficiency and effectiveness of discovery, undermine essential privacy protections, and conflict with the language the defense itself already agreed to prior to the hearing. In line with standard practice in this district, the initial, agreed-upon language on the definition of sensitive materials should be adopted.

Finally, despite the Court's ruling, the defendants yet again contest the use of the watermark language. The Court expressly approved the

government's watermark language. (ECF No. 165, PageID.882.) The Court was clear: if the government's language causes files to be non-searchable, then the defendants can request a change in the watermark. (*Id.*) None of that has happened. The Court should enter the government's proposed language in full, which is included in Exhibit A.

**Paragraphs 3(a), (b), (c), (d), (e), (f), (g), (h), (i): Non-disclosure Requirements**

**The parties' proposals and the Court's holding:**

The parties shared general agreement that sensitive materials, as defined in paragraph 2, must be maintained in the possession and control of the defense team; the sensitive materials cannot be disclosed to third parties; the sensitive materials must be destroyed or returned to the government at the conclusion of the case; and defense team and any future attorneys for the defendant must read and acknowledge the protective order. (ECF No. 118-1, PageID.588-92; ECF No. 157-1, PageID.808-10.) The Court identified the lack of any "substantive difference" between the parties' proposed language, and the parties and the Court agreed to these provisions. (ECF No. 165, PageID.892-96, 901-02.)

The parties disputed whether the defendants should have unsupervised access to the sensitive materials. The Court held that the defendants could review "their own phones but not other defendants' phones" without a member of a defense team. (ECF No. 165, PageID.907-08.)

**Party dispute and analysis:**

After the Court's hearing, the defense altered much of the language that they had already agreed to. Of note, the defense now insists on a massive exception to the non-disclosure requirement: that the defendant's own electronic data can be disclosed, with no apparent limits or restrictions. Here is the defense's new language:

> (3)(c) <u>Other than the PII as defined in Paragraph 2, a defendant's own electronic data does not constitute Sensitive Material to that defendant.</u> The defendants may have custody of a copy of their own electronic data, to the extent it is in the government's possession.
>
> (3)(e) No Sensitive Materials, <u>except a defendant's own electronic data,</u> may be transmitted to any persons other than the defense team without the consent of the parties or further authorization from this Court.
>
> (3)(f) Without the consent of the parties or further authorization from this Court, the defense team may use Sensitive Materials solely to prepare a defense in this case, including any sentencing, appeal, or collateral attack, and for no other purpose and in connection with no other proceeding.

> This limitation does not apply to a defendant's own device(s) and data.

(emphasis added).

Yet again, that is not what the defense proposed at the hearing, what the parties agreed upon, or what the Court ordered. The defendants' proposed order language included "electronic evidence obtained in this case" including "cell phone extractions." (ECF No. 157-1, PageID.809.) There was no special exclusion for the defendant's own electronic data in the defendants' proposal. And their proposal prohibited dissemination of *all* sensitive materials to third parties. (*Id.*, PageID.808-09.) Only after the hearing and the Court's ruling have the defendants claimed that their own electronic data should be excluded from the protective order's terms and disseminated to unauthorized third parties.

The information in electronic devices contains extraordinarily sensitive information on the victims, third parties, and other defendants. Redefining the agreed-upon meaning of sensitive materials to exclude the defendant's own electronic data would defeat the purpose and need of this protective order. It would allow any defendant to take materials, for instance, about the victims' families, the personal activities of third

parties, or another defendant's sex lives and disseminate the materials widely, solely because they originated from the defendant's own phone.

The Court did not address or approve of this extraordinary carve out. As to the defendant's electronic devices, the Court addressed the parties dispute over *unsupervised access* to their *own phones*, and the Court concluded that the defendants could review "their own phones but not other defendants' phones" without a member of a defense team. (ECF No. 165, PageID.907-08.) In so doing, the Court *expressly acknowledged* that the defendant's own phones would be subject to the protective order and could not be disclosed individuals outside the defense team:

> Mr. Kuhn: This protective order is limited to the defense team so if it's beyond the defense team, then that would -- *the defendants are prevented from disclosing their phones outside the defense team, which is what we both agree upon.*
>
> The Court: *Right.*

(*Id.*, PageID.910 (emphasis added).)

The Court also addressed concerns from the defense that the defendant's phones could have personal pictures on their devices. The Court "accepted [the government's proposal] *as written*," which limited the use of sensitive material solely to the defense and prosecution of this case. (*Id.*, PageID.895-96 (emphasis added).) But the Court recognized

that the defense could seek relief if specific material was of concern in the future, and the government reiterated that it would work in good faith with the defense to prevent litigation. (*Id.*)

Now, the defendants' language—proposed for the first time after the Court's decision—moves the goalposts and attempts to relitigate the issue. As the Court held at the September 9 hearing, and in line the defendant's own proposal, sensitive materials cannot be disseminated to unauthorized third parties, full stop. There is no exception for the defendant's own devices. Although the defendants can *view* extractions from their own cell phones *without supervision*, they cannot view extractions for the other defendants' cell phones without a member of the defense team. Exhibit A's language mirrors the Court's holdings, and the Court should deny any efforts to relitigate basic terms of the order.

**<u>Paragraph 6: Victim and Witness Protection</u>**

**The parties' proposals and the Court's holding:**

Prior to the September 9 hearing, the government sought essential protections for witnesses and victims to ensure their identities and personal information was not disseminated:

> Victim and Witness Identification: In all filings with the Court and during all pre-trial proceedings, all parties shall

> refer to the victims by their victim number contained in the indictment. The names, identities, and personal identifying information of victims and government witnesses may not be disclosed by the defendant or the defense team outside the defense team.

Strikingly, the defendants opposed these basic protections, claiming that the use of victim numbers was cumbersome. (ECF No. 144, PageID.729-30.) They also alleged that some of the witnesses and victims may have already "made statements in the media about the alleged conduct" so these witnesses and victims did not warrant protection. (*Id.*)

At the hearing, the Court addressed and rejected this defense claim:

> MS. BASHI: The problem I think becomes the general language and the broadness of the language in the proposed order. We were worried we might be on the hook where some of the victims in the indictment have identified themselves which was part of our brief.
>
> THE COURT: But even if they identified themselves at one point in time, *they may not wish to continue with that*.

(ECF No. 165, PageID.874 (emphasis added). Upon questioning from the Court, defense counsel affirmed the need to comply with the Crime Victims' Rights Act and accepted that the use of initials for victim names was appropriate. (*Id.* at PageID.873.)

**Party dispute and analysis:**

Once again, after the Court's ruling, the defendants have changed their position and arguments. They now claim that government witnesses are not subject to protection. And they seek to litigate yet again whether victim information is subject to protection if the information has "otherwise been made public." The defendants' proposed language, which wholly excludes witnesses from protection, is below:

> Victim Identification: In all filings with the Court and during all pre-trial proceedings, all parties shall refer to the victims by their victim number contained in the indictment. The names, identities, and personal identifying information of victims and government witnesses may not be disclosed by the defense team outside the defense team, unless for and during the preparation of the defense or if the information has otherwise been made public, such as during judicial proceedings.

(emphasis added).

Until now, the defendants have never argued that witnesses are not subject to coverage under the protective order. Nor did the Court rule that witnesses are not covered. The government proposed language that protected the identities of both victims and witnesses. The defense opposed this provision based on a claim that some of these individuals *may* have *made a statement* about the case. The Court rejected this

argument. (ECF No. 165, PageID.873-74.) Yet now, the defense has come forward with an entirely new theory that witnesses can be excluded from protection. That was not the Court's order, and that is not supported by the law. Fed. R. Crim P. 16(d) cmt. (the need for a protective order is "obvious" when "there is reason to believe that a witness would be subject to physical or economic harm if his identity is revealed"); *Dixon*, 355 F. Supp. 3d at 4 (emphasizing the need to protect the privacy and safety of witnesses as a core basis for a protective order); *Brown*, 2022 WL 9936378, at *2 (personal identifiers of government witnesses are properly subject to a protective order); United *States v. Bell,* Case No. 17-20183, 2020 WL 7041182, at *4 (E.D. Mich. Dec. 1, 2020) (Goldsmith, J.) (redaction of witness identities in disclosures to the defense is justified); *see also United States v. McCullah*, 745 F.2d 350, 353 (6th Cir. 1984) ("This court, however, has firmly established that defense counsel is not entitled to know in advance of trial who will testify for the government.").

Further, despite the Court's rejection, the defendants again seek to exclude victims from protection if the "information has otherwise been made public." This is a massive carveout of essential victim protections,

which would allow for dissemination of victim identifiers so long as the defendants can argue it is "otherwise" public.

But under the Crime Victims' Rights Act and related caselaw, the Court *must* protect victim's identities and personal information, including through use of a protective order. 18 U.S.C. § 3771(a)(8), (b)(1); *see, e.g., Brown*, 2022 WL 9936378, at *2 (release of victim information raises "significant privacy concerns"); *United States v. Torres*, Case No. 20-418, 2020 WL 4500046, at *4 (D.N.J. Aug. 5, 2020) ("Courts around the country have relied on the CVRA to find good cause for entry of protective orders." (collecting sources)); *Bell,* 2020 WL 7041182, at *4 (ensuring protection of victim identities). And the privacy and safety of victims and witnesses is no idle concern in this case. (*See* ECF No. 1 (describing in detail the threats, intimidation, and harassment of the victims, including through organized attacks on family homes, businesses, and associations, along with witness intimidation and evidence destruction); ECF No. 42 (same); ECF No. 118, PageID.568-69, 681-83 (discussing in detail the need for such protections)).

The law does not exempt from protection victims and witnesses whose identity may be known to the defendants or who may support the

prosecution, through public statements or "otherwise." As the Court has already held, "even if they identified themselves at one point in time, they may not wish to continue with that." (ECF No. 165, PageID.874.) The Court should reject the defendants' attempt to relitigate basic witness and victim protections. Exhibit A sets correctly forth the Court's ruling.

## Paragraph 8: Violations and Contempt

**The parties' proposals and the Court's holding:**

Prior to the hearing, the government suggested language on violations that referred to the Court's contempt power, which is the basis for enforcement of Court orders:

> Violations. Any violation of any term or condition of this Order by a party, counsel, or any member of the defense team may be held in contempt of court, and/or may be subject to monetary or other sanctions as deemed appropriate by the Court.

(ECF No. 118-1, PageID.595-96.)

The defendants did not include this language and argued that inadvertent disclosures should not be subject to sanctions. (ECF No. 157-1, PageID.811.) When asked by the Court why the defense objected to the government's language, defense counsel replied: "I think it may just be

against our nature as defense lawyers to agree to that." (ECF No. 165, PageID.907.) No further justification was provided.

At the hearing, the Court accepted the government's proposed language. The Court repeatedly discussed the use and importance of contempt to enforce the protective order: "I mentioned the possibility of contempt of court. It's a very serious sanction before getting to this part where individuals who I'm all looking at eye to eye would have access to material that the government asserts could hurt other individuals if it's released." (*Id.*, PageID.908.) For violations of the protective order, the Court explained that it would "certainly hold a contempt hearing and determine if it's appropriate and/or a monetary sanction of some sort." (*Id.*, PageID.909.) Further, because the contempt standard would exclude reasonable inadvertent disclosures made in good faith, the Court did not add language to the government's proposal. (*Id.*, PageID.911-12.) "Less is more," as the Court explained. (*Id.*, PageID.912.)

**Party dispute and analysis:**

Despite the Court's clear holding about the use of its contempt power and adoption of the government's language, the defendants again want to change this language, removing any reference to contempt:

> Violations. Any violation of any term or condition of this Order by a party, counsel, or any member of the defense team may be sanctioned by the Court.

(emphasis added).

This isn't what the Court ordered. The language on contempt was proposed by the government, reviewed, and adopted by the Court after extensive briefing and a multi-hour hearing. Once again, the defendants want to change this Court's ruling. The Court should enter the protective order language it already approved, which is attached as Exhibit A.

## II. CONCLUSION

For these reasons, the United States requests that the Court enter the protective order that it adopted at the September 9 hearing, which is set forth in Exhibit A.

Respectfully submitted,

JEROME F. GORGON, JR.
United States Attorney

/s/ *Robert M. Kuhn*
Robert M. Kuhn
Margaret M. Smith
Assistant U.S. Attorneys
211 West Fort Street, Suite 2001
Detroit, Michigan 48226
(313) 226-9100
robert.kuhn@usdoj.gov

Dated: October 28, 2026

**CERTIFICATE OF SERVICE**

I hereby certify that on October 28, 2026, the foregoing document was electronically filled by an employee of the United States Attorney's Office with the Clerk of the Court using the ECF system, which will electronically serve all ECF participants.

/s/ *Robert M. Kuhn*

Robert M. Kuhn
Assistant U.S. Attorney
211 West Fort Street, Suite 2001
Detroit, Michigan 48226
(313) 226-9100
robert.kuhn@usdoj.gov